GEORGE TUNNELL et al, respondents below *vs.* PAYNTER JEFFERSON, complainant below.

G. T. being indebted to his ward, at the urgent instance of his sureties in the guardian bond, gave his judgment bond to three of them, to indemnify them and their co-cureties; and for the same purpose, assigned to them certain debts, which they collected and held for indemnity. Judgments were afterwards recovered against G. T., by other creditors, who questioned the transaction as legally fraudulent, (G. T. having become insolvent) but it was sustained by the court.

APPEAL from the decree of the Chancellor, in the Court of Chancery. Heard at the June term, 1849, before Booth, Chief Justice, and Harrington and Milligan, Judges.

The bill was filed by Paynter Jefferson, for himself and other creditors who should intervene, stating that P. J., on the first of January, 1841, sold and conveyed to George Tunnell several lots of ground, &c., for $775, who paid $75 in cash and gave his judgment note for $700, payable July 1, 1842, upon which judgment was entered August 18, 1842. G. T. went into possession of said lots, and on the 16th of August, 1842, being in contemplation of insolvency, by deed conveyed all his property, real and personal, to Charles Tunnell, Isaac H. Houston and Joseph Kollock, who were (with others) his sureties in certain guardian bonds, in trust for their indemnity, with provision that any remaining balance should revert to said G. T., thereby creating an illegal preference, in fraud of his other creditors. He also, at the same time, executed a judgment bond, upon which judgment was confessed the same day to the same persons, for the payment of $15,000; which bond was absolute in its terms, but was charged to be on the same trusts; without any consideration, fraudulent and void. On the third of March, 1843, the alienees re-conveyed the real property to G. T., but not

the personal property, which, together with all the real property, was afterwards sold in execution of said judgment, and bought (chiefly) by C. T., I. H. H. and J. K. ; who also collected and received sundry judgments and other credits and effects to a large amount, assigned to them for that purpose by G. T., in preference and fraud of other creditors and in contemplation of insolvency.

The bill prayed an account of the property of G. T. received by the defendants under said assignments, and of the money levied under said judgment ; of the rents of the land, &c. ; for payment of complainant's judgment; that the deed of assignment, bond and judgment to defendants might be deemed fraudulent and void, and a re-conveyance of the land ordered; for further relief, and for a present injunction.

The answer denied the fraud actual or legal; set up the long neglect of complainant to enter judgment or issue execution (none having ever been issued) as a bar to any aid in equity, and insisted that the judgment bond gave to them by G. T., to indemnify them against their suretyship in his guardian bond, was legal and proper, the same being required of him for their security, and given when he was solvent, and without any expectation or contemplation of insolvency ; for which purpose of indemnity he also assigned the judgments and other securities mentioned in the bill to the other respondents, for all his sureties, who then stood liable for large balances appearing due on the guardian accounts, towards which they had since paid $2,897 30.

The Chancellor decreed that the assignment due from G. Tunnell to Tunnell, Houston and Kollock, for the sureties, was fraudulent and void, being voluntary and creating a preference, contrary to the act of assembly ; that the bond, not being for a bona fide debt due from G. T. to the obligors, was fraudulent and void as against the complainant or judgment creditors ; and Tunnell, Houston and Kollock were ordered to pay into court, for the benefit of complainant's other creditors coming in $3,098 26, with interest, being the money collected, and proceeds of sale, of the property of George Tunnell.

From which decree this appeal was taken.

It was argued by *Rogers* and *Cullen,* for the appellants; and by *Saulsbury* and *Layton,* for the respondents.

The Chancellor stated the following reasons for his decree:—

JOHNS, *Chancellor :*—In this case the Chancellor decreed in favor

of the complainant, he being a bona fide creditor of George Tunnell; and against the defendants, they not being creditors, but only sureties.

1. The Chancellor considered the sureties incapable of taking the bond on which their judgment was entered and the property of the principal, both personal and real, sold by virtue of execution process issued thereon in payment of a debt claimed as due and payable, to the amount of $15,000, when as sureties they have not paid the same or any part thereof; for until payment the surety is not a creditor, and there can be no debt due from the principal to his surety; therefore, the simple liability as surety, cannot constitute a valuable consideration for a bond conditioned for the payment of a sum of money as a debt. The bond, for want of a valuable consideration, being invalid in relation to the rights of the bona fide creditors of the principal, the judgment entered thereon, and the execution and sale, cannot be, as against creditors, sustained or held in any respect, in equity, as effectual.

2. The Chancellor considered that the liability of surety would constitute a good and sufficient consideration for a bond of indemnity, with a collateral condition, under which sureties might secure by judgment, a lien on the real estate of the principal, which on any damage ensuing to the security, or payment made by surety and legally ascertained, might be rendered available; but the fact of payment of damage would have to be determined upon breaches assigned, and by verdict or inquisition, established before execution process could issue against the principal or his property. This mode of securing indemnity to sureties, benefits the surety and never can prejudice the creditor, for the payment of whose debt the surety is liable; as the surety can only reach the property of the principal when he has paid the creditor and thereby, to the extent of such payment, stands in the place of the creditor, and it may also prove beneficial to the creditor; for if the lien should on such a bond be secured by judgment, so as to bind the land of the principal, and the same be also subject to the lien of subsequent judgments, the creditor might be entitled to obtain the advantage resulting from the priority of liens, and such lien would thereby be applied to discharge the debt of the creditor, out of the property of the principal or debtor.

3. The Chancellor considered all sureties entitled to relief in equity, on payment by contribution from co-sureties, or after de-

fault, and when in danger of sustaining loss, by a bill filed for indemnity; but the principle of indemnity would not authorize or sanction a court of equity in decreeing payment of the debt to surety, or that the principal should become the debtor of his surety by bond or obligation.

4. The Chancellor considered, that sureties in administration bonds or bonds of executors and guardians, would not as other sureties, be entitled to relief, as against their principal, when the relief sought is that of indemnity, inasmuch as the act of assembly for establishing courts of law and equity within this government, section 25, provides: "That nothing herein contained shall give any power or authority to hear, decree or determine in equity, any matter, cause or thing wherein sufficient remedy may be had in any other court or before any other magistrate or judicature in this government, either by the rules of the common law or *according to the tenor and directions of the laws of this government;* but that when matters determinable at common law shall be brought before them in equity, they shall refer or remit the parties to the common law.

Inasmuch then, as the act of assembly of this State confers jurisdiction over this matter of counter security by executors, administrators and guardians, upon the Orphans' Court, and the remedy there provided is summary and in every respect ample and sufficient, according to the tenor and directions of the laws of this government, therefore, it seems to be a necessary consequence, that the Court of Chancery in this State, has no power or authority to hear, decree or determine in equity any such matter.

5. The Chancellor also considers, in accordance with the case of *Redpath* vs. *Comly,* as decided on appeal, in the Court of Errors and Appeals, that a debtor had a right to give his creditor a bond for a debt bona fide due or existing at the time of executing the bond, or to secure the payment of the same by judgment confessed; but it does not extend to the giving a bond or confessing a judgment by a principal to his surety, when there is no debt due.

6. The Chancellor in the decree made, only embraced the proceeds of sale under the fi. fa. and vend. ex., being the private property of George Tunnell, and excluded the trust funds, which yet remain in the hands of the sureties and were collected by them under the assignment.

The Chancellor considered the taking of the bond and the execu-

tion thereof by George Tunnell, at the time when he was indebted to the complainant for the purchase money of a tract of land sold and conveyed to him by complainant, and not being indebted to the óbligees to whom he executed said bond, as fraudulent in respect to the complainant or creditor.

And further, the Chancellor considered the assignment and the circumstances under which the same was taken and abandoned ; the re-conveyance by the assignees; followed by the execution of the bond to the same persons, not being creditors; and the subsequent proceedings upon said bond, by which the property of the said G. Tunnell was sold and applied to the use and benefit of persons not having any debt due, as fraudulent in respect to the complainant, a bona fide creditor of the said George Tunnell.

*By the Court :—*

BOOTH, *Chief Justice :*—1. By the common law, a principal may pledge or assign his property to his surety, in trust, with the view of honestly and fairly indemnifying him against the engagement which he has entered into, for the benefit, and at the request of the principal. Such pledge or assignment may be given before the principal has made default, or the surety been called upon to pay. It is founded upon a sufficient consideration ; but the law considers the engagement of the surety, as constituting in itself, a valuable consideration. The preference thus given over the creditors of the principal, if done bona fide, without any fraudulent design, and with no other intent than to indemnify the surety, is not illegal, or contrary to any principle of public policy. (See *Stevens et al* vs. *Bell,* 6 *Mass. Rep.,* 342.)

For the same reason, the principal, with the view to indemnify the surety, may give him an absolute bond, conditioned for the payment of a certain sum, before the day has arrived for the payment of the money or the performance of the act or duty by the principal, for which the surety engaged to be answerable ; and if the money be not paid by the principal, at the day named in the bond, the surety may proceed to judgment and execution for its recovery.

The cases of *Toissant* vs. *Martinnant,* 2 *Term Rep.,* 100, and *Penny* vs. *Foy,* 8 *Barn. & Cress.,* 11; (15 *Com. Law.,* 147,) are authorities to show, that such a bond is founded on a sufficient consideration; and that it cannot be objected to, as fraudulent, from the circumstance of its being made payable before the day on which

the principal is to pay his creditor, or do such other act, for the performance of which the security became responsible.

But if the surety, instead of an absolute bond, takes a bond merely to indemnify him, he must show that he has been actually damnified; because until then, the bond is not forfeited. Per Tenterden, C. J., *Penny* vs. *Foy*, cited in *Theobold on Prin. and Surety*, 231, (1 *Law Lib.*, 137.)

2. The provision in the assignment or deed of trust, that any surplus which might remain after the indemnification of the sureties, should revert to the principal, is no indication of fraud; for the law implies such a resulting trust, without the provision. (2 *Kent's Com.*, 536, *note d.*) The deed openly shows the nature of the trust, and the destination of the surplus; so that the creditor with such information, may, if he thinks proper, reach it by the aid of a court of equity, or by means of the process of attachment. Assignments of this description in favor of creditors, have been held to be legal, in *Livingston* vs. *Bell*, 3 *Watts*, 198; *Rahen* vs. *McElrath*, 6 *Watts*, 151, and see *McCulloch* vs. *Hutchinson*, 7 *Watts*, 436; and no distinction exists, in such cases, between the creditor and the surety.

If the security pledged or conveyed in trust, for the benefit of creditors and sureties, be delivered over agreeably to the conveyance, and be not manifestly excessive, and greatly more than adequate to the debt or indemnity, no injury is done to other creditors; if there be a stipulation, that the surplus over the debts and indemnities, shall enure to the use of the debtor. Such surplus may be secured by attachment at the suit of any other creditor, and therefore, is not a fraud on any creditor. There is no distinction between a pledge given or a trust created to secure creditors, and a pledge or trust to secure to sureties an indemnity against their liabilities. (Per Parsons, C. J., 6 *Mass. Rep.*, 342-3, *Stevens* vs. *Bell.*)

So also in the case of a recovery at law upon the absolute bond, after it is forfeited; and the sureties are not afterwards damnified by being obliged to pay for the default of their principal, they might be compelled by a bill in equity, to account to the creditors for the money they had received, or to pay it over by the process of attachment.

3. The bill charges that George Tunnell, being deeply indebted, and in failing circumstances, and in contemplation of insolvency, executed the assignment and bond; and that they, and the judg-

ment entered on the bond, are fraudulent, and in direct violation of the act of assembly for preventing and punishing the offence of preferring creditors by fraudulent deeds of assignment.   But neither the bill, nor the argument has shown in what respects the assignment, bond, or judgment, contravenes any of the provisions of the act of assembly.   The act makas void a judgment fraudulantly or collusively confessed for money not justly due, or for a greater sum than is justly due, and also a bond or obligation executed without a real, true and adequate consideration, in each of these cases:—1. Upon the party's making an assignment of his property for the benefit of his creditors, either voluntarily, or ·on his taking the benefit of the insolvent law.   2. Where, before making such assignment, the party confesses such judgment or gives such bond with the intention and in contemplation of taking the benefit of the insolvent laws, or of making such assignment. ˙ And 3. where, after such assignment, he fraudulently or collusively confesses a judgment, or makes and antedates a bond, with the intent, that it shall be paid out of, or set up as a demand against the property assigned, the act makes such bond or judgment void.

Respecting assignments, the act declares, that where a person in contemplation of insolvency, or of taking the benefit of the insolvent laws, makes an assignment of his property for the benefit of his creditors, and under its provisions or otherwise, prefers one or more creditors, to the others, that such assignment shall be deemed fraudulent and void.

The defendants expressly deny in their answer, that any of them were actuated by any fraudulent intent or purpose whatever ; or that George Tunnell ever intended to give a voluntary preference or fraudulent priority of lien in favor of his creditors.   On the contrary, they aver that there was no other object than to obtain an indemnity for themselves and their co-securities, for the large amount of money appearing to be due and payable by George Tunnell, on his accounts, as one of the administrators of Miers Burton, deceased, for which the sureties of George Tunnell were liable.˙  They deny that either the assignment or bond was voluntary on his part, or that he, or any of the defendants considered him insolvent, or likely soon to be so ; but aver that he gave the assignment and bond with much reluctance, and solely at their instance and urgent solicitation, and upon their expressed determination, in case of his refusal, to resort to legal proceedings to take his property from him.   They

also aver, that he believed, at the time of making the assignment and bond, that his property was much more than sufficient to discharge all his just debts and liabilities. The complainant and the other creditors must have likewise thought so; otherwise some of them would have entered judgment against him; and as no lien at that time existed against his property, it is a reasonable inference, that none of them then believed him to be in failing circumstances, or in danger of insolvency. There is no evidence to sustain the charges in the bill, and nothing to disprove the answer. If then, George Tunnell neither made nor intended to make an assignment, either voluntary or otherwise, for the benefit of his creditors, or for preferring creditors, or in contemplation of insolvency, or of taking the benefit of the insolvent laws, how does the assignment, bond or judgment, given solely for the security and indemnity of his sureties, and therefore, founded upon a sufficient and valuable consideration, contravene any of the provisions, or come within any of the terms of the act of assembly?

But the assignment, supposing it be void by reason of the stipulation in favor of George Tunnell respecting the surplus, must be excluded from the consideration of this case; because the sureties never claimed under it, but refused to accept the trust. They reconveyed the real estate to George Tunnell; and no part of the personal property was demanded by, or delivered to them, by virtue of the assignment. They had a right to abandon it, as they deemed it an invalid security; and to take the bond with warrant of attorney, which was free from objection. But in my opinion, as both were founded upon a sufficient consideration, and are not opposed to any principle of the common law, or to the provisions of the act of assembly, the complainant's claim to relief, upon the ground of the alleged fraudulent character of the assignment and bond, cannot be sustained.

But there is one ground arising out of the circumstances of this case, on which the complainant is entitled to relief, although not mentioned or relied upon in the bill, and entirely unnoticed in the argument. It is alleged in the bill, and admitted by the answer, that seven hundred dollars of the purchase money of the real estate conveyed by the complainant to George Tunnell, remained unpaid; and that the defendants, with a knowledge of that fact, became the purchasers. The complainant has, therefore, an equitable lien on the estate for the unpaid purchase money; which lien was not

waived or discharged by his taking George Tunnell's bond, or his afterwards entering judgment upon it. (*Mackreth* vs. *Symmons,* 15 *Vez.,* 329, *Brown* vs. *Gilmer,* 4 *Wheat.,* 292, note a.; 4 *Mason's Rep.,* 212; 2 *Sugden,* 72; 2 *Mad. Ch'y.,* 129.)

It is inconsistent with equity and good conscience, as between the vendee and vendor, that the former shall hold the estate and not pay the consideration money; and it is equally inconsistent with justice and equity, that the sureties of the vendee, with full knowledge that he obtained the estate without paying for it, should be permitted through this means, to keep and appropriate it to their use and benefit, in order to indemnify themselves against their liabilities on his account, without paying to the vendor, the balance of the unpaid purchase money. Upon the principles which govern a court of equity, the complainant is entitled to such payment. It is part of the relief asked for in the special prayer for particular relief; and were it not, yet as it is consistent with, and required by the circumstances of the case made out by the bill, it may be offered under the general prayer for relief.

My opinion is, that so much of the decree of the Court of Chancery as declares the said assignment to be fraudulent and void; and so much thereof as declares the said bond and judgment thereon, of the sixteenth of August, 1842, to be fraudulent and void as respects the complainant, upon the assumption that they were given without consideration; and that the said assignment and bond are respectively fraudulent and void, on the alleged ground that they contravene the express provisions of the act of assembly; be reversed.

And also, that so much of the said decree as directs the said Charles Tunnell, Isaac H. Houston and Joseph Kollock, to pay into the Court of Chancery the said sum of $653 26, with interest thereon from the 12th of October, 1842, and also the further sum of $2,445, with interest thereon from the 12th of April, 1843; and that the said sums be applied in payment of the judgment of the complainants, and for the benefit of such other creditors of the said George Tunnell as might come in, under the said decree, by becoming parties to the bill; be likewise reversed.

And that so much of the said decree as orders the defendants to pay the costs of the complainant's suit in the Court of Chancery, be affirmed.

A decree ought to be made by this court, as follows:—

1. That the defendants shall pay to Paynter Jefferson, the sum of

seven hundred dollars, with interest thereon, from the first day of January, 1841; and also the costs of the judgment entered the eighteenth of August, 1852, at his suit, against George Tunnell.

2. That the defendants, Charles Tunnell, Isaac H. Houston and Joseph Kollock, shall file a statement upon oath, showing the amount of the liabilities which they and the other sureties of George Tunnell in his administration and guardian bonds, are, or shall be, absolutely bound to pay; including the costs and charges which have been or may be incurred by them, as sureties.

3. That the last said defendants shall file an account in the Court of Chancery, charging themselves with the proceeds of sale of the personal and real estate of George Tunnell, arising from the execution process issued upon their judgment against him, of the sixteenth of August, 1842, first deducting the costs of the said judgment and execution process. And after such deduction being made, they shall charge themselves with interest on the proceeds of sale of the personal property, from the twelfth day of October, 1842, and with interest on the proceeds of sale of the real property, from the twelfth day of April, 1843. And as against the charges in relation to the proceeds of sale of the real estate, they shall credit themselves with the amount of the said principal, interest and costs, herein before ordered to be paid to the said Paynter Jefferson.

4. That the last said defendants shall also charge themselves in the said account, with all sums of money received by them, and with which they may be justly chargeable, on all judgments, bonds, bills, notes, book accounts, and other debts and personal property due or belonging to George Tunnell in his own right, or as administrator of Miers Burton, deceased, or as guardian of the minor children of Miers Burton, deceased, which have been transferred by him to the defendants, for the indemnification of themselves and their co-sureties; and the said defendants shall credit themselves with all costs, charges and reasonable expenses in relation to these transactions, to which they may be justly entitled.

5. The balance with which the last said defendants may be justly chargeable on the said account, shall be retained by them, to be applied to the indemnification of themselves and their co-sureties. And the surplus, if any remain after such indemnification, shall be paid into the Court of Chancery, to be distributed among the creditors of the said George Tunnell, under a decree of the said court, in

such manner as shall be consistent with the principles of justice and equity.

Exceptions may be taken to the statement and account aforesaid, or to either of them, according to the principles and practice of the Court of Chancery.

6. Costs in Court of Appeals to be paid by appellants.

HARRINGTON, *Judge.*—The character of this transaction is not left in any doubt.    It was an attempt by George Tunnell to indemnify the sureties in his several guardian bonds by means, first, of a regular assignment on the sixteenth of August, 1842, of all his property, real, personal and mixed, to three of them, with an express trust for the eight others, by name, and a resulting trust for himself.    This security was abandoned, under the impression that it was prohibited by our act against fraudulent insolvency.    The grantees, or assignees, took possession of no part of the property under this assignment; but repudiating the same, as to any action under it, they further executed a reconveyance of the real property to George Tunnell.

But, for the same purpose of securing an indemnity to these sureties, Tunnel on the same day, executed to three of them, in trust also for the eight others, an absolute bond and warrant of attorney in $30,000, conditioned for the payment of $15,000, upon which judgment was confessed, and in execution of which all of Tunnell's property was sold.    For the same purpose and on the same consideration, he assigned to them certain judgments and other debts due him, which they collected and received, holding the proceeds for their indemnity as aforesaid.

The leading question in the case is, whether this transaction is lawful in respect to the other creditors of George Tunnell, who had not before the sixteenth of August, 1842, obtained by judgment or execution any lien on his property?

It does not appear that George Tunnell, at the date of this bond, contemplated insolvency; or that he, or his sureties, considered him insolvent; or that he was insolvent.    There were no judgments against him, and he was in possession of a considerable property, real and personal, but his guardian accounts showed large balances due to his wards, for which these eleven securities were answerable, and at their urgent solicitation he executed this bond, to secure the debt which he owed the minors, and thus indemnify the sureties.

The question is, whether he had the power to do this; or whether, in reference to his other creditors, it is to be deemed legally fraudulent. There is no actual fraud in it; on the contrary it was right and proper to pay the debt due these minors, and to secure or indemnify his sureties, who were all meritorious creditors; but on grounds of general policy, can a debtor thus in embarrassed and failing circumstances, prefer even the most deserving creditor, by giving him in the mode here adopted, the first judgment lien and the first execution, to an amount sufficient to cover his whole property?

Preferring creditors by a debtor in failing circumstances, is not fraudulent; it is only prohibited when in connection with assignments under the insolvent laws, or voluntary assignments made with the intention or in contemplation of taking the benefit. A failing debtor may lawfully pay a just debt, or many debts, even to the extent of all his property; and if he may pay such debt by an application of his property, I see no reason why he may not secure it by a transfer, assignment, judgment lien or mortgage thereof. His power to do so is conceded in the cases cited by complainant's counsel from *Cowen* and *Wendell* and *Johnson*, which cases are decided under the New York statute of frauds, prohibiting conveyances to the use of the grantor, and all conveyances made with intent to delay, hinder or defraud creditors; either of which would be void at common law, or under the statute of Elizabeth. But merely preferring creditors either by assignment or security by lien, is not within that statute, and would be lawful there or here, unless the mode of performance so connects itself with proceedings in the insolvent court, actual or contemplated, as to fall within the special restrictions of our act of assembly. Hence in *Waters vs. Comly*, 3 *Harr. Rep.*, 129, this court decided that a failing debtor might pay any one of his creditors, or give a judgment for a bona fide debt, securing payment of it in full.

Our act of assembly adopts the principle of equal distribution, *after* insolvency, and prohibits preferences in assignments made " in contemplation of insolvency, or in contemplation of taking the benefit of the insolvent laws;" being assimilated, in this respect, to the English bankrupt law. The securities taken in this case, whether the deed or bond, if unlawful, must be so either under this act, or at common law, or under the statute of Elizabeth. The last prohibits feigned and covinous conveyances, bonds, &c., made to de-

fraud creditors and others of their just and lawful debts; and, at common law, all conveyances made with intent to delay, hinder or defraud creditors, were void. Was the bond in this case covinous, made to defraud creditors, or with intent to delay and hinder them? George Tunnell was under a real obligation to these sureties. They were bound for him in large balances ascertained on his guardian accounts, for property of his wards, which was then in his posession; as such sureties they were his creditors, and not merely creditors, but of a class of creditors always regarded as having strong claims to priority and protection. [*Murray* vs. *Riggs*, 1 *Johns. Rep.*, 584.] His affairs were becoming embarrassed, and though not apprehending actual insolvency or contemplating such a result, they urgently solicited the security of a conveyance or bond of indemnity, giving them a preference of other creditors, by lien upon his property. They were entitled to this as his sureties; they obtained it by lawful diligence. They sought not, nor did he, to cover his property from other liabilities, nor to defraud or delay other creditors; the proposition came from them, and was reluctantly agreed to by him, under threats of proceedings for his removal from the guardianship. This appears to be the line of distinction between lawful and unlawful preferences. The question is always whether they were made with intent to defraud others, or granted in discharge or security of a fair liability, as a concession to the superior diligence or urgency of a creditor. This is often left to a jury, as ruling questions of fraudulent preference. Thus, in *Thompson* vs. *Freeman*, 1 *Term Rep.*, 155, Lord Mansfield said, a bankrupt when in contemplation of bankruptcy, cannot by his voluntary act favor any one creditor; but if under fair or legal process he give a preference, it is evidence that he does not do it voluntarily. (2 *Bos. & Pul.*, 584, *Hartshorne* vs. *Slodden*.) To avoid the delivery of goods (as security) by a trader in failing circumstances, it must appear that he had the act of bankruptcy in contemplation; if they were delivered through urgency of demand or fear of prosecution, whatever may have been his contemplation, it will not vitiate the security. If a security be given bona fide, under the impression of an obligation, and not springing from the voluntary act of the bankrupt, said security is good. The rule is this. Any payment by a trader in contemplation of an act of bankruptcy, voluntarily and with the intention to prefer a creditor, is deemed fraudulent as to other creditors; but a creditor has the right by dili-

gence to procure such preference, and if payment be made or security be given at his solicitation or from fear of suit, it will be good, even where the debt is not due. (11 *East Rep.*, 262, *Crosby* vs. *Cranch*.)

It does not apper to me that the bond given in this case to secure the amount due on the guardian accounts was fraudulent at common law or by statute; nor that the deed itself can be regarded, according to the decree of the Chancellor, as "fraudulent and void, being voluntary and creating a preference contrary to the act of assembly." The act only prevents preferences given in the deed of assignment of all the debtor's property for the benefit of his creditors, or such as are made in contemplation of insolvency; and has never been held to prevent a debtor in failing circumstances from paying a debt, executing a bond, or giving a security for a bona fide debt or obligation. (*Waters* vs. *Comly*, 3 *Harr. Rep.*, 117.)

At the time of the execution of these papers, it would have been lawful in George Tunnell to have paid the balances appearing on the guardian accounts in cash; or to have delivered property to the full amount to any person authorized to receive it for the minors; and I cannot perceive how an assignment, or bond to the sureties for the same object, can be deemed fraudulent. It deprived the other creditors of no rights, except the right of preference, which they as well as the sureties might have obtained by diligence; it covered no property beyond the just debt, for the trust was expressed on the deed, and the bond was taken as an indemnity; it hindered no one in the collection of his debt, beyond the amount of the wards' claims, which were equally meritorious debts, having, through the sureties, obtained a legal preference by superior diligence.

If the deed is objectionable in law, it seems to me it is not for giving a preference, for it is not an assignment for the benefit of creditors, in which preferences are prohibited, but for another feature which would make an assignment void at the common law, viz: the reservation of a reversionary interest in the debtor. To that extent this deed would probably be held void, and it might vitiate it altogether, (2 *Pick. Rep.*, 137,) though it is not unquestioned whether this would deprive the creditor, not being a party to the fraud, of the benefit of his security under it, if that security is otherwise lawful and valid. (5 *T. Rep.*, 420; 8 *Ib.*, 521; 2 *Pick. Rep.*, 131.) The same objection does not lie against the bond;

which, though of the same date, is a distinct security, both having similar objects, but the one not taken to enforce the other, which is the case where separate instruments are vitiated by the fault of one. (5 *Cow.*, 571-2.) It would be impossible by the bond to enforce this objectionable feature of the deed; the effect of the judgment, if executed, was just the reverse, to prevent a return of the property or its proceeds to the debtor, and make it immediately applicable to all his debts, in the just order of preference. And the answer distinctly states that the bond was taken as an alternative and not an ancillary security, the obligees having determined not to execute the trusts of the deed. The whole case then comes to the question whether a surety in a guardian bond, after accounts settled, showing indebtedness to the minor, may, for the purpose of indemnity, lawfully, by persuasion or threats of suit, procure from the guardian, being embarrassed but not insolvent, a judgment bond in an amount sufficient to cover his liability. I think he may ; that such security is not fraudulent in itself, nor fraudulent in law; it is not *merely* voluntary on the part of the debtor; not made in contemplation of insolvency; not without consideration; and does not cover his property or deprive other creditors of their rights, or confer any rights which a bona fide creditor may not by diligence lawfully acquire.

The complainant in this case was guilty of great neglect. He might by ordinary diligence have secured his debt, which he held without even entering judgment, for a period of more than eighteen months, during which time, or before the respondents entered their judgment, no other creditor so much doubted George Tunnell's solvency, as to enter any judgment against him. If during this time he was thriftless and improvident, becoming involved in debt and approaching insolvency, the diligent creditor who first took warning, is entitled to the benefit of his diligence, if he merely protects himself, without in any way aiding the debtor to defraud others, and the sureties on whose credit and by whose means this debtor held most of his property, were as much entitled to this protection as any other creditor.

But apart from these questions, upon which the case was presented to the Chancellor, there appears to be sufficient ground for relief to the complainant presented by the bill and not denied, but rather admitted by the answer. The complainant's demand was for the balance of the purchase money of the lands conveyed to Tunnell, of which the respondents had full notice at the time of the conveyance

to them, and the execution of the bond under which the land was sold, and the proceeds paid to the respondents. The complainant is, therefore, entitled, on principles of equity, to be paid the purchase money out of these proceeds; and to the decree of the court for the payment of the same, namely, $700, with interest from the first of January, A. D. 1841. The residue of such proceeds and all other money, property or effects of George Tunnell, collected or received by the defendants, under the bond and judgment, or the assignments, or otherwise, ought to be decreed to be applicable to their indemnity, as Tunnell's securities, and the balance to Tunnell's other creditors; and the defendants ought to be required by the decree of this court, to account for all the funds so received, and to show the amount of their liability or loss as sureties, for which they are entitled to indemnity. For this purpose, an account should be decreed and the record remanded.

And the respondents should pay the costs of this cause, both here and in chancery; for although the decree of the Chancellor, declaring the bond and judgment fraudulent and void is reversed, the complainant's equity is sustained to the full extent of his claim, and the obligation of the defendants to pay that claim out of the proceeds of sale of his land conveyed to George Tunnell, is established. Had this obligation been recognized by them and discharged, there would have been no necessity for these proceedings; nor, so far as Paynter Jefferson is concerned, any costs incurred.

Decreed accordingly.